LISA A. RASMUSSEN, ESQ.
Nevada Bar No. 007491
**LAW OFFICE OF LISA RASMUSSEN**
601 South 10th Street, Suite 100
Las Vegas, NV 89101
Telephone: (702) 471-1436
Facsimile: (702) 489-6619
Email: Lisa@LRasmussenLaw.com
Attorneys For Plaintiff

## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>ASSET RESOLUTION, LLC,<br><br>Debtor.<br><hr>THE B&B DL SETTLEMENT TRUST,<br>by and through its trustee, Michael Coulson,<br><br>    Plaintiff,<br>vs.<br><br>McALAN DUNCAN, CROSS FLS, LLC, and THE CLAIMS RECOVERY TRUST, By And Through Its Trustee, William A. Leonard, Jr.,<br><br>    Defendants. | Case No.: BK-S-09-32824-RCJ (Lead Case)<br>Chapter 7<br><br>Jointly Administered with Case Nos.:<br>BK-S-09-32831-RCJ; BK-S-09-32839-RCJ;<br>BK-S-09-32843-RCJ; BK-S-09-32844-RCJ;<br>BK-S-09-32846-RCJ; BK-S-09-32849-RCJ;<br>BK-S-09-32851-RCJ; BK-S-09-32853-RCJ;<br>BK-S-09-32868-RCJ; BK-S-09-32873-RCJ;<br>BK-S-09-32875-RCJ; BK-S-09-32878-RCJ;<br>BK-S-09-32880-RCJ; BK-S-09-32882-RCJ<br><br>**Adversary No.**<br><br>**COMPLAINT FOR INTERPLEADER** |

1.     Upon knowledge with respect to himself his own acts and information and belief as to all other matters set forth herein, plaintiff B&B DL Settlement Trust ("QST") by and through its trustee, Michael Coulson ("Trustee") files this Complaint For Interpleader, as follows:

. . .

. . .

. . .

. . .

**Complaint For Interpleader -- Page 1 of 13**

# I.

## PRELIMINARY STATEMENT

2. This is a Complaint for interpleader by the B&B DL Settlement Trust concerning distribution of $997,106.11 from part of a settlement fund held by the Plaintiff over which this Court expressly maintained jurisdiction. [AR Bk. Doc. 1952].

3. The $997,106.11 represents the attorney's fees for defendant McAlan Duncan ("Duncan") arising out of the recent $4.5 million distributed by the Asset Resolution estate to the "B&B DL Settling Clients." *See* AR Bk Doc. 2399.

4. The Plaintiff QST has received complaints about Duncan and his affiliate, defendant Cross FLS, LLC ("Cross"), from various B&B DL Settling Clients who object to the payment of fees to Duncan or Cross. The QST believes that the complaints by the various B&B DL Settling Clients may be applicable as a matter of law and/or fact to the other 1200 or so clients in Duncan's multiple-clients representation, and that a complaint by one client in the multiple-client relationship requires that all fees be escrowed. The QST also believes that defendant The Claims Recovery Trust represents the claims and interests of certain of the objecting B&B DL Settling Clients.

5. The QST has not received a demand from Duncan for the $997,106.11, but does not believe that Duncan has waived any claim to such proceeds.

6. Based upon the foregoing competing claims, the QST is in doubt as to who is entitled to receive the $997,106.11, is in danger of being exposed to multiple liability, and cannot safely remit the proceeds without the aid of this Court.

7. The $997,106.11 is therefore being hereby tendered and interplead with the Court, so that the QST may avoid any risk of liability with respect to the funds and the Court may resolve the matters in dispute with respect to the money.

## II.

## PARTIES AND SERVICE

**A. Plaintiff CRT**

8. Plaintiff B&B DL Settlement Trust ("Trust" or "QST") is a qualified settlement trust formed under section 468B of the Internal Revenue Code and an order entered by this Court on October 19, 2012 (the "October 2012 Order")[AR Bk. Doc. 1952].

9. The QST was formed to "maximize the value of the settlement" for the "B&B DL Settling Clients" pursuant to the Agreed Order Regarding Settlement And Related Relief entered by the Court on September 6, 2012 (the "September 2012 Order")[AR Bk. Doc., 1915].

10. The Trust is a citizen of the State of Nevada because the Trust's trustee, Michael Coulson, is a citizen of the State of Nevada.

11. The B&B DL Settling Clients are the beneficiaries of the QST. A list of the B&B DL Settling Clients was filed in the Asset Resolution Bankruptcy Cases as AR Bk. Doc. 1750 and adopted by the Court in paragraph 26 of the September 2012 Order.

12. Although some of the B&B DL Settling Clients are citizens of the State of Texas (and are therefore non—diverse to Defendants), the overwhelming number of B&B DL Settling Clients are citizens of States other than Texas (including Alaska, Alabama, Arkansas, Arizona, California, Colorado, Connecticut, Florida, Georgia, Hawaii, Iowa, Idaho, Illinois, Indiana, Kansas, Louisiana, Massachusetts, Maryland, Michigan, Minnesota, Missouri, Mississippi, Montana, Nebraska, Nevada, North Carolina, North Dakota, New Hampshire, New Jersey, New Mexico, New York, Ohio, Oregon, Pennsylvania, South Dakota, Tennessee, Utah, Virginia, Washington, Wisconsin, and Wyoming), as well as several United States territories or foreign countries.

**B.     Defendant McAlan Duncan**

13.    Defendant McAlan Duncan ("Duncan") is an individual citizen of the State of Texas.  Duncan has acted as a lawyer to the B&B DL Settling Clients.

14.    Pursuant to FRBP 7004(b) and (e), service of the summons and this Complaint may be made on Duncan via first class mail at the following address: 16475 North Dallas Parkway, Suite 550, Addison, Texas 75001.

**C.     Defendant Cross FLS, LLC**

15.    Defendant Cross FLS, LLC ("Cross") is a Texas limited liability company with a principal place of business in Dallas, Texas.  Duncan is and was at all relevant times a principal of Cross.  Cross has acted as loan servicer and/or management agent for many of B&B DL Settling Clients and other direct lenders at the same time Duncan served as the lawyer for the B&B DL Settling Clients.

16.    Pursuant to FRBP 7004(b) and (e), service of the summons and this Complaint may be made on Cross via first class mail addressed to the attention of an officer, managing or general agent, or any other agent authorize to receive service. According to the Texas Secretary of State website, Cross but may be served as follows:  Cross FLS, LLC by and through its registered agent, McAlan Duncan, 16475 North Dallas Parkway, Suite 550, Addison, Texas 75001.

**D.     The Claims Recovery Trust**

17.    Defendant Claims Recovery Trust ("CRT") is a liquidating trust formed under federal and state law pursuant to several orders entered by this Court in the Asset Resolution Bankruptcy Cases.  [See, e.g., AR Bk Docs. 1706, 1915, & 1988]

18.    The CRT is a citizen of the State of Nevada because the CRT's trustee, William A. Leonard, Jr., is a citizen of the State of Nevada.

19. Plaintiff is informed and believes that the CRT asserts claims to the $997,106.11 of funds which are the subject of this interpleader through an "Assignment" or appointment of the CRT in a "Representative Capacity" by various B&B DL Settling Clients, within the meaning of the CRT Trust Agreement approved by the Court in the September 2012 Order. [AR Bk. Docs. 1915]

20. Pursuant to FRBP 7004(b) and (e), service of the summons and this Amended Complaint may be made on the CRT through its Trustee, William A. Leonard, Jr., via first class mail at the following address: 6625 S. Valley View, #224, Las Vegas, NV 89118.

### III.

### JURISDICTION AND VENUE

**A.     Subject-Matter Jurisdiction**

      **1.     Interpleader**

21. In addition or in the alternative, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1335, because at least two or more claimants of diverse citizenship are claiming or may claim entitlement to the cash which is the subject of Plaintiff's interpleader, the value of which exceeds $500.

      **2.     Arising-Out-Of Or Related-To Bankruptcy Jurisdiction**

22. In addition or in the alternative, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334(b).

23. The Court's September 2012 Order provides that this Court shall retain jurisdiction to implement the terms of the September Order, and the Court's October 2012 Order approving formation of the QST provides that the Court shall maintain jurisdiction over the settlement funds to be received, allocated, and distributed by the QST. This matter is therefore a core proceeding

under 28 U.S.C. § 157(b)(2)(A)(matters concerning administration of the estate) and/or § 157(b)(2)(O)(other proceedings affecting the liquidation of the assets of the estate).

24. Alternatively, if this action is a non-core proceeding under 28 U.S.C. § 157(c)(1), this Court is an Article III Court and no consent to litigation of the case and entry of final judgment in this Court is necessary. If such consent is necessary, Plaintiff hereby consents to this Court entering a final judgment in this matter under 28 U.S.C. § 157(c)(2).

### 3. Supplemental Jurisdiction

25. In addition or in the alternative, this Court possesses supplemental jurisdiction under 28 USC § 1367(a). The Court has original jurisdiction over, among other proceedings, the above-referenced Asset Resolution bankruptcy cases and certain adversary proceedings and/or contested matters therein, the action styled *3685 San Fernando Lenders, LLC et al. v. Compass USA SPE, LLC et al.*, Case No. 2:07-cv-00892-RCJ-GWF)(the "892 Case"), and the "follow on" case to the 892 Case styled *Leonard C. Adams et. al. v. Silar Advisors, LP, et al*., Case No. 3:11-cv-00210-RCJ-VPC (the "210 Case"). Because the issues involving the interplead funds and/or the disgorgement and damages claims of the B&B DL Settling Clients involved in this adversary proceeding are so related to claims in the foregoing proceedings, they form the same case or controversy under Article III of the United States constitution.

## B. Venue

26. Venue is proper before this Court pursuant to 28 U.S.C. § 1397 because one or more claimants to the interplead funds reside in this district.

27. In addition or in the alternative, venue is proper before this Court pursuant to 28 U.S.C. § 1409(a) because this adversary proceeding arises in or relates to the Asset Resolution bankruptcy cases, which are pending in this district.

### C. Personal Jurisdiction

28. This Court has personal jurisdiction over defendants under FRBP 7004(f), which provides for nationwide service of process and consequent personal jurisdiction over "any defendant with respect to a case under Code or a civil proceeding arising under the Code or arising in or related to a case under the Code," if such jurisdiction is "consistent with the Constitution and the laws of the United States."

29. In addition or in the alternative, Duncan has voluntarily submitted himself to the personal jurisdiction of this Court through, among other things, seeking and obtaining *pro hac vice* admission in the 892 Case (892 Case Docs. Nos. 1131 and 1150)(which was one of the actions involved in the Settlement which resulted in the funds over which this interpleader action is based). In his sworn *pro hac vice* petition, Duncan "consents to the jurisdiction of the courts and disciplinary boards of the State of Nevada with respect to the law of this state governing the conduct of attorneys to the same extent as a member of the State Bar of Nevada" and "agrees to comply with the professional standards of professional conduct required of the members of the bar of this Court."

30. Cross has voluntarily submitted itself to the jurisdiction of this Court by, among other things:

(a) Seeking and obtaining orders affirming Cross' appointment as a servicer for numerous loans in 2010 (including loans which are the subject of the objections to fees)[*see* AR Bk Doc. 913 and 989];

(b) Filing a "Status Report and Notice of Termination" with this Court, in which Cross made numerous representations about what it did and did not do with respect to servicing many of the loans which are the subject of objections to fees [*see* AR Bk. Doc. 1979];

(c) Seeking and being denied intervention in the 892 Case in 2008, which resulted in an order entered by this Court declaring that "Cross shall be held accountable to this Court for taking action inconsistent with the prior rulings of this Court and the U.S. Bankruptcy Court for the District of Nevada in this proceeding . . . ." [892 Case Doc. 516 at 5, ¶ 7];

(d) Filing an objection to the motion for a protective advance loan by the Margarita Annex direct lenders and demanding them to set aside $200,000 for Cross' alleged "disposition fee" with respect to that loan (a dispute remains pending as a contested matter in the Asset Resolution bankruptcy cases)[*see* AR Bk Doc. 1742 & 1774 at 11-12, ¶ 51]; and/or

(e) Obtaining an order from this Court, based on a declaration of Duncan as the "managing member" of Cross, directing the bankruptcy trustee to execute and deliver a deed selling Fox Hills loan water rights and real estate collateral in which over $1 million of the sales proceeds and yet another purported Cross "disposition fee" was escrowed for further litigation concerning allocation and distribution of the money (a dispute which is also still pending)[*see* AR Bk Doc. 1694 at 2/lines 20-25 and 1689].

31. Defendant CRT is subject to personal jurisdiction in this Court because, among other reasons, it is a resident of the State of Nevada, has filed various actions in this Court, and was formed pursuant to this Court's orders.

//

//

//

//

## IV.

## BACKGROUND FACTS

### A. The QST

32. The QST is a qualified settlement trust formed under section 468B of the Internal Revenue Code and an order entered by this Court on October 19, 2012 (the "October 2012 Order")[AR Bk. Doc. 1952]. The QST is administered by a trustee and a three member Trust Advisory Board elected by a majority vote of the B&B DL Settling Clients.

33. The QST was formed to "maximize the value of the settlement" approved by the Court in the September 2012 Order for the B&B DL Settling Clients and to receive, account for, and distribute the cash and other assets payable to the B&B DL Settling Clients from time to time as a result of that settlement. [*See* AR Bk. Docs. 1952, 1915, & 2399 at 4/lines 24-28].

34. The Court's October 2012 Order approving formation of the QST states that the Court "shall retain jurisdiction over such settlement fund." [AR Bk Doc. 1952].

35. The September 2012 Order which is supplemented by the October 2012 Order also provides that "the Court reserves jurisdiction [to supplement or amend the order] . . . to the fullest extent permitted by law." [AR Bk Doc. 1915 at 68, ¶ I].

### B. The B&B DL Settling Clients' Retention Agreement With Duncan

36. One of the functions of the QST is to allocate various charges and other expenses in connection with distributions of the settlement fund, including payments to be made under the B&B DL Settling Clients' retention agreement (the "Retention Agreement") with Duncan and his co-counsel, Bickel & Brewer (who represented the B&B DL Settling Clients in the 892 Case, the 210 Case, the Asset resolution Bankruptcy Cases, and related proceedings.

37. The Retention Agreement is referred to at paragraphs 26 and 27 of the September 2012 Order. [*See* AR Bk Doc. 1915 ¶¶ 26 & 27]

38. The Retention Agreement created a joint, multiple-client representation by Duncan of each and all of the B&B DL Settling Clients.

39. The "Contingency Fee" established under the Retention Agreement provided the lawyers a contingent fee equal to the sum of: (a) a "Savings Fee" equal to 35% of any savings from any servicing related waterfall fees of default interest, late charges, and other fees which were being sought by Compass as listed in a baseline schedule; and (b) a "Damages Fee" equal to 50% of the total gross proceeds of damages or disgorged fees from the various defendants.

40. Page 6 of the Retention Agreement further provided that Duncan "will share 50% in the Contingency Fee, if any" for serving as co-counsel with Bickel & Brewer.

C. **The Duncan Fee Set-Aside And B&B DL Settling Clients' Objections To Payment**

41. On behalf of the B&B DL Settling Clients, the QST recently received a $4.5 million distribution from the Asset Resolution bankruptcy estate (the "Asset Resolution Distributed Cash") as part of the settlement fund generated by the settlement approved by the Court in the September 2012 Order. [*See* AR Bk Doc. 2399]

42. Bickel & Brewer has been paid only their portion of the fees.

43. Of the $4.5 million of Asset Resolution Distributed Cash, after a set-aside for certain expenses wholly unrelated to the filing or litigation of this adversary proceeding, $997,106.11 (the "Duncan Fee Set-Aside Funds") is allocable to payments which would be due defendant Duncan under the calculations called for by the Retention Agreement.

44. The Trustee of the QST and the members of the QST's Trust Advisory Board QST are aware of various complaints from certain B&B DL Settling Clients objecting to payments of fees to Duncan out of any settlement funds.

45. The complaints relate to various alleged wrongful acts and omissions by Duncan in his dual roles as lawyer under the Retention Agreement and loan servicer (through his affiliate, defendant Cross).

46. The QST is informed and believes that defendant CRT represents the interests and claims to the Duncan Fee Set-Aside of certain B&B DL Direct Lenders who were/are joint clients in the multiple representation by Duncan/Cross.

47. Although the QST has not yet received a direct demand from Duncan for distribution of the Duncan Fee Set-Aside, the QST has been informed by Bickel & Brewer that Duncan and or his agent or attorney has requested the fees.

48. The QST also knows that previous efforts to informally resolve complaints about paying fees to Duncan/Cross fees were unsuccessful.

## V.

## **FIRST CAUSE OF ACTION**

### (Interpleader)

49. Plaintiff re-alleges and incorporates paragraphs 1 through 46 above as though fully set forth herein.

50. Rival, adverse, and competing claims exist with respect to who is entitled and in what amounts to distribution of the Duncan Fee Set-Aside Funds.

51. Plaintiff claims no interest on behalf of itself in the Duncan Fee Set-Aside Funds and has no interest in the outcome of the actual or competing claims to such funds.

52. By reason of the conflicting claims regarding the Duncan Fee Set-Aside, there is doubt as to who is entitled to those settlement funds, the QST is danger of being exposed to multiple liability, and the funds cannot safely be remitted without the aid of this Court.

53. Plaintiff QST is ready, willing, and able to deposit the Duncan Fee Set-Aside Funds into the registry of this Court or to any other custodian or trustee the Court deems proper, in order to permit resolution of the competing claims to the Duncan Fee Set-Aside Funds.

## V.

## PRAYER FOR RELIEF

54. WHEREFORE, Plaintiff requests that the Court issues summons and cite Defendants to appear and, after such proceedings determined appropriate by the Court:

(a) Require claimants to interplead and assert against one another their respective claims to the Duncan Fee Set Aside Funds, which are currently in possession of Plaintiff;

(b) Approve a deposit of Duncan Fee Set Aside Funds to be deposited in the registry of the Court or such other appropriate depository under 28 U.S.C. § 1335, 11 U.S.C. §105, FRCP 22, FRBP 7022, FRCP 67, FRBP 7067, and/or this Court's inherent power or other applicable authorities;

(c) If necessary, issue such temporary, preliminary, and/or permanent injunctive relief to maintain the Court's exclusive jurisdiction over adjudications concerning the Duncan Fee Set-Aside Funds and matters arising out of a common nucleus of operative fact;

(d) Rule as to whether and how much of the Duncan Fee Set-Aside Funds shall be paid to Duncan and/or the B&B DL Settling Clients;

(e) Enter an appropriate order discharging Plaintiff from any and all liability to claimants with respect to the Duncan Fee Set-Aside Funds and/or the dispute described herein; and

(f) Grant such other relief the Court determines to be appropriate based on the law, the equities, and the facts.

Dated: February 27, 2014

Respectfully submitted,

LAW OFFICES OF LISA A. RASMUSSEN
601 South Tenth Street, Suite 100
Las Vegas, Nevada 89101

By:  /s/ *Lisa A. Rasmussen*
  LISA A. RASMUSSEN, ESQ.
  Bar No. 7491

*Attorneys For Plaintiff*