LISA A. RASMUSSEN, ESQ.
Nevada Bar No. 007491
**LAW OFFICE OF LISA RASMUSSEN**
601 South 10th Street, Suite 100
Las Vegas, NV 89101
Telephone: (702) 471-1436
Facsimile: (702) 489-6619
Email: Lisa@LRasmussenLaw.com

*Attorneys For Plaintiff*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | ) Case No.: BK-S-09-32824-RCJ (Lead Case) |
| | ) |
| ASSET RESOLUTION, LLC, | ) Chapter 7 |
| | ) |
| Debtor. | ) Jointly Administered with Case Nos.: |
| | ) BK-S-09-32831-RCJ; BK-S-09-32839-RCJ; |
| | ) BK-S-09-32843-RCJ; BK-S-09-32844-RCJ; |
| THE B&B SETTLEMENT TRUST, | ) BK-S-09-32846-RCJ; BK-S-09-32849-RCJ; |
| | ) BK-S-09-32851-RCJ; BK-S-09-32853-RCJ; |
| Plaintiff, | ) BK-S-09-32868-RCJ; BK-S-09-32873-RCJ; |
| vs. | ) BK-S-09-32875-RCJ; BK-S-09-32878-RCJ; |
| | ) BK-S-09-32880-RCJ; BK-S-09-32882-RCJ |
| MCALAN  DUNCAN, | ) |
| | ) Adversary No. 14-01032 |
| Defendant. | ) |
| | ) **DECLARATION OF LISA RASMUSSEN IN** |
| | ) **SUPPORT OF OPPOSITION TO MOTION** |
| | ) **FOR SUMMARY JUDGMENT** |

I, LISA RASMUSSEN, hereby swear, under penalty of perjury of the laws of the United

States, as follows:

1.      I am an attorney licensed to practice law in all courts in the State of Nevada and I

am counsel of record for the B&B Settlement Trust, also known as the QST.

2.   The parties exchanged rule 26 discloures in September 2014.

3.   The parties have not served document requests or interrogatories.

4.      No discovery or scheduling order has been negotiated by the parties or presented to

the magistrate.

**Page 1 of 4**

5. There was one deposition notice scheduled for Michael Collins of B&B served by Duncan for November 17. 2014, however it was cancelled because Michael Collins was in a trial that had not yet concluded on that date. Duncan has not attempted to reschedule that deposition.

6. Additionally, the QST is in the process of amending its complaint per the clarification order entered on December 30, 2014.

7. I had a death penalty trial scheduled to start on January 7, 2015, which was continued because my mitigation expert was diagnosed with cancer. I also had an appeal due in a death penalty case on February 2, 2015 and I had oral argument before the Ninth Circuit Court of Appeals in a civil case where I was defending judgment in favor of my client on January 29, 2015. Additionally, I was unfortunately not even aware that this motion for summary judgment had been filed on the afternoon of December 24, 2014 until Mr. Cory graciously brought it to my attention on or about January 18, 2015. Thus, I have not yet had an opportunity to prepare the appropriate amended complaint for the QST because I have been focusing on the matters set forth herein, as well as this response to the Motion for Summary Judgment.

8. There are numerous factual issues that have not been resolved, but which would likely be resolved through discovery, including the following:

    a. Whether or not Bickel & Brewer required as a condition of its retention that Duncan be retained to provide expertise which B&B did not have and believed it could not obtain for the issues in the 892 litigation and trial;

    b. Whether Duncan represented to B&B that the direct lenders would not retain that firm unless Duncan was also retained and there was a 50/50 split of the fees;

    c. Whether Duncan misrepresented to the direct lenders that B&B would not accept retention by them unless Duncan was also retained along with B&B;

    d. Whether Duncan actually, personally, and on a timely basis advanced all of the litigation expenses necessary for the proper representation of the direct lenders and for the trial;

e.  Whether Duncan personally provided the legal services for which he claims he had special expertise or was that work provided by others in whole or in part;

f.  Why B&B stated in its February 2014 letter to the QST that it was proper to separately allocate payments to B&B and payments to Duncan?

g.  Whether B&B and Duncan have a separate agreement which obligates B&B to pay over 50% of any contingency fees it received from work for the direct lenders and if such a separate agreement exists, what are the terms of the agreement and why was it never disclosed to the direct lenders?

h.  Whether B&B believes that it has the power to forgo any future fees under the Retention Agreement such that neither B&B nor Duncan would be entitled to receive additional fees;

i.  Whether B&B has been threatened with suit by Duncan if B&B agrees to no longer receive fees from the 892 settlement and if so by whom?

j.  How responsibilities between B&B and Duncan actually delegated and were the two parties jointly responsible as co-counsel, or whether Duncan was simply hired by B&B to provide expertise which B&B did not have or could not otherwise attain;

k.  Whether Duncan provided less than 25%, why is he entitled to 50% of the fees?

l.  Whether payment of additional fees to Duncan would be excessive under the circumstances of this case; and

m.  Whether Duncan has breached his fiduciary duties to the direct lenders as their counsel and /or whether he has engaged in self-dealing which would vitiate any right to additional fees, and whether that self-dealing involved selling loan resolution packages to the direct lenders that benefitted Duncan, but not the direct lenders.

9.      Attached hereto as Exhibit 1 is a copy of a letter sent by my client, the QST trust, to Michael Collins in February 2014.  The letter is in turn edited as to a specific time frame and returned to my client, the QST, via Michael Colson, having been signed by Michael Collins.

Dated this 4th day of February, 2015, and executed at Las Vegas, Nevada.

*/s/ Lisa A. Rasmussen*

_____

LISA RASMUSSEN

Exhibit 1

Exhibit 1

**MICHAEL J. COULSON, TRUSTEE**
**B&B DL QUAILIFIED SETTLEMENT TRUST**
**6170 RIDGEVIEW COURT, SUITE B**
**RENO, NV 89519**

February 14, 2014

Mr. Michael Collins
Bickel & Brewer
1717 Main Street
Dallas, Texas 75201

Dear Mr. Collins:

As you know, the Qualified Settlement Trust is undertaking the accounting for allocation and the disbursement of the $4.5 million of funds from the recent ARC distribution.

In that connection $450,000 will be held by the QST to cover various trust expenses (including expenses for the Compass/Mezei audit and ARC matters) and the QST shall distribute $4,050,000.00 to the B&B Direct Lenders. Of that amount $997,106.11 is allocable to Bickel & Brewer's portion of the contingent fee under the B&B Engagement Agreement and $997,106.11 is allocable to McAlan Duncan under the B&B Engagement Agreement

The QST has been made aware that Bickel & Brewer has not spoken with Mr. Duncan in nearly two years and that Mr. Roger Stubbs has recently contacted Bickel & Brewer on behalf of Mr. Duncan asking about payment of the contingency fee under the B&B Engagement Agreement.

In light of this information, for good order's sake, please acknowledge that the fees payable to Bickel & Brewer and Duncan are properly being allocated separately under the B&B Engagement Agreement and confirm that Bickel & Brewer's receipt of the $997,106.11 distribution is solely for the benefit of Bickel & Brewer and not for Mr. Duncan. Mr. Duncan's fees will be dealt with separately. Please acknowledge and confirm this letter by signing below and returning it to me at your earliest convenience. Upon such confirmation, the wire will be sent to Bickel & Brewer's account for its portion of the collected contingency fee.

Thank you.

Sincerely

Michael Coulson
Trustee

Confirmed: Michael Collins