**OPPS**
Timothy S. Cory, Esq.
Nevada Bar No. 001972
**TIMOTHY S. CORY & ASSOCIATES**
8831 West Sahara Avenue
Las Vegas, Nevada 89117
Telephone:  (702) 388-1996
tim.cory@corylaw.us

Michael D. Rawlins, Esq.
Nevada Bar No. 005467
**DURHAM JONES & PINEGAR**
10785 W. Twain Ave., Suite 200
Las Vegas, Nevada 89135
Telephone:  (702) 870-6060
mrawlins@djplaw.com

*Attorneys for McAlan Duncan*

## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| ASSET RESOLUTION, LLC<br><br>                              Debtor, | Case No. BK-S-09-32824-RCJ<br>(Lead Case)<br><br>Chapter 7 |
| THE B&B DL SETTLEMENT TRUST,<br><br>                              Plaintiff,<br>vs.<br><br>MCALAN DUNCAN.<br><br>                              Defendant. | Jointly Administered with Case Nos:<br>BK-S-09-32831-RCJ; BK-S-09-32839-RCJ;<br>BK-S-09-32843-RCJ; BK-S-09-32844-RCJ;<br>BK-S-09-32846-RCJ; BK-S-09-32849-RCJ;<br>BK-S-09-32851-RCJ; BK-S-09-32853-RCJ;<br>BK-S-09-32868-RCJ; BK-S-09-32873-RCJ;<br>BK-S-09-32875-RCJ; BK-S-09-32878-RCJ;<br>BK-S-09-32880-RCJ; BK-S-09-32882-RCJ<br><br>Adversary No. 14-01032-RCJ<br><br>**OPPOSITION TO MOTION FOR AN ORDER DIRECTING THE PARTIES TO PARTICIPATE IN MEDIATION AND FOR AN ORDER STAYING THE PENDING LITIGATION PENDING MEDIATION** |

- 1 -

## I.    **INTRODUCTION**

Two wise guys walk into a law office.  "Mr. Duncan, Mr. Corleone thanks you for winning his case.  It was truly remarkable how you came to his assistance and got him such a wonderful victory.  He wants us to present an offer you can't refuse.  Give back all the money he paid you, and give up your claim for any future contingency fees you might be entitled to."

"Why would I do that?"

"Mr. Corleone thinks he maybe could have gotten a better deal with another lawyer, and that maybe you made some mistakes along the way."

"Mistakes?  Would Mr. Corleone be willing to show me what mistakes I made?  For instance, does he have any documents showing my mistakes?"

"Unfortunately, Mr. Corleone has no interest in turning over any evidence of your mistakes."

"What if I refuse to consent to this shakedown?"

"We would hate to see things get messy.  Won't you just sit down with us and a neutral mediator who can help us resolve this case in good faith?"

Mediation requires good faith.  A party who is unwilling to produce evidence supporting its alleged claims, and expects a party to settle merely to avoid the messiness of litigation should not expect the support of the Court in the process.  This is a shakedown, pure and simple.

Both the CRT and QST are controlled by Donna Cangelosi.  Cangelosi's own letters to the direct lenders show she was thrilled about the deal she negotiated with Bickel & Brewer (which expressly stated Duncan would share in the contingency fee).  She was thrilled about the economics of the deal, which she bragged about in a letter to direct lenders (Doc. 141 at Ex. 1).  She was thrilled about the outcome and the efforts of Duncan and B&B.  She stated she did not begrudge the substantial sums that the victory would earn Duncan (Doc. 150-2 at Ex. B-2).  And she decried the "B.S. allegations" that Silar's counsel, Frank Majorie, had made about Duncan's alleged "conflict of interest."  (Doc. 96 at Ex. A).

1    After Majorie and Cangelosi joined forces and concocted this suit, they resisted all efforts

2  to actually produce a scrap of paper to support their allegations.  The history of Duncan's efforts

3  to get the CRT's Rule 26 disclosures was chronicled in the *Motion to Compel Plaintiff and*

4  *Cross-Claimant to Produce Rule 26(a) Disclosures* (Doc. 123)[1] and the related declaration of

5  Tim Cory (Doc. 124).  That document showed that, as of September 19, 2014, the CRT had not

6  produced any documents in support of its Cross-claim against Duncan.  This case is now a year

7  old, and neither the CRT nor the QST has produced any documents pursuant to Rule 26, despite

8  demand from Duncan, and, before the CRT was dismissed, resisted all efforts to obtain a

9  deposition of Mr. Collins of Bickel and Brewer.

10    The CRT has now been dismissed from the case.  The QST has changed hats from

11  disinterested bystander wondering whether it should pay Duncan or not, to Cangelosi's latest

12  enforcer.  *See Opposition to Motion for Summary Judgment* (Doc. 145).  But, since October of

13  last year, neither the CRT nor QST have done anything to advance this litigation.  In December,

14  2014, the Court invited the QST to amend its pleading.  *See Order* (Doc. 143).  The QST has not

15  done so.  Aside from demanding meditation, the QST has done nothing since October other than

16  opposing a motion for summary judgment.  The opposition to motion for summary judgment

17  relies almost exclusively on a hearsay-laden declaration of Donna Cangelosi that fails to raise

18  any genuine issue of material fact. Meanwhile, Duncan has spent over $250,000 to defend his

19  honor, clear his name, and in a futile attempt to discover the factual basis of the claims brought

20  against him.

22    The request to mediate is a transparent plea.  "Don't make us prove anything. Spare us

23  the mess of facts and law.  Make Duncan sit in a room with a mediator, so he can be strong-

24  armed to give us something to go away while giving legitimacy to our shakedown."  Duncan has

25  no interest in mediating with Cangelosi or those who take direction from her—none.  She has

26  proven herself to be unprincipled, demonstrably dishonest, vindictive, and opportunistic.

27

28  [1] This motion has never been ruled on because the Court dismissed the CRT from the lawsuit in its Order entered on October 17, 2014 (Doc. 133).

- 3 -

1    Duncan is not opposed to the concept of reconciling good faith disputes. He does not

2    need a reminder on the costs of litigation—he is painfully aware of it. Duncan has even asked

3    the CRT and QST to make him a settlement offer—they have not. If a group of direct lenders

4    wants to have good faith discussions with Duncan, they are free to reach out to him. But a

5    forced mediation with Cangelosi in the picture, prior to any discovery, and with important

6    questions concerning the lack of standing of the QST and CRT being unresolved, is simply

7    untenable and would be a waste of time and resources.

8    II.    **ARGUMENT**

9        A.    **Any Mediation is Premature until the Standing Issues are Resolved.**

10        As set forth in Duncan's *Reply Points and Authorities in Support of Motion for Summary*

11    *Judgment* (Doc. 150), and the earlier *Objection to the CRT Acting as the Real Party in Interest*

12    *and Motion for Substitution, Joinder, or Ratification of the Real Parties in Interest* (Doc. 131),

13    both the QST and CRT lack standing to assert claims of the direct lenders in this action. To

14    summarize, trustees in bankruptcy cases cannot assert claims that are not claims of the estate.

15    The nature of the claims asserted by the QST and CRT are non-assignable under Nevada and

16    Texas law. And the QST's own charter does not permit it to assert the kinds of claim it purports

17    to assert in its Opposition to Motion for Summary Judgment.

18        The QST and CRT have avoided the standing issue for months. It cannot be ignored, and

19    any mediation undertaking at this point would be meaningless because, without standing, the

20    QST and CRT cannot offer Duncan any final resolution. By ruling on the Motion for Summary

22    Judgment, the Court can bring clarity to this important issue. No mediation at this point can

23    succeed without such clarity.

24        B.    **The Court Should Not Compel a Party to Mediate Against His Will.**

25        The Court has discretion to set a case for a settlement conference or other alternative

26    methods of dispute resolution. LR 16-5. Despite this authority, courts are reluctant to exercise

27    such discretion when one of the parties opposes a settlement conference or forced mediation.

28    This reluctance stems from the rationale that "[w]hen a mediation is forced upon unwilling

1   litigants, it stands to reason that the likelihood of settlement is diminished." *In re African-Am.*

2   *Slave Descendants' Litig.*, 272 F. Supp. 2d 755, 760 (N.D. Ill. 2003) (citation omitted).   Indeed,

3   "[r]equiring parties to invest substantial amounts of time and money in mediation [when one

4   party objects] may well be inefficient." *Id.*

5         This District Court has stated it "generally does not grant motions for settlement

6   conferences that are opposed." *McCarty v. Roos*, 2013 WL 5436578 *2 (D. Nev. Sept. 27, 2013)

7   (stating that the parties were free to file a stipulation requesting a settlement conference when

8   they both agreed it would be useful).   As a result, the Court routinely denies unilateral requests to

9   schedule settlement conferences when it appears that such a conference would be fruitless.  *See,*

10  *e.g., Cohn v. Ritz Transportation, Inc.*, No. 2:11-cv-1832-JCM-NJK (D. Nev. April 18, 2014)

11  (Order) ("[T]he Court finds no utility in directing the parties to attend a settlement conference

12  when the likelihood of reaching a settlement agreement is *de minimis*.");  *Cornett v. Gawker*

13  *Media, LLC*, No. 2:13-cv-01579-GMN-CWH (D. Nev. Aug. 28, 2014 Order) (holding that

14  because the defendant had no desire to participate in an early settlement conference, "there

15  remains nothing before the Court indicating that conducting a [sic] early settlement conference

16  would be a wise use of the parties' or the Court's resources").

17        Other courts have found mediation to be an inefficient and unnecessary expense when the

18  circumstances do not warrant mediation.   *In re Patchell*, 344 B.R. 8 (Bkrtcy D. Mass. 2006)

19  (holding that mediation efforts in the case would only add to the parties' costs); *Darrington v.*

20  *Assessment Recovery of Washington, LLC*, 2014 WL 3858363, at *5 (W.D. Wash. Aug. 5, 2014)

22  ("Requiring mediation, in the Court's view, will serve no real purpose other than increasing the

23  amount of attorneys' fees expended by all parties.").

24       **C.**    **Mediation Would Be Premature as Neither the QST or CRT have Presented**

25             **any Evidence to Support their Claims.**

26        In both *Cornett* and *Cohn*, this Court noted that a settlement conference would be

27  premature based upon the status of discovery in the case.   Specifically, *Cornett* noted that there

28  had been minimal, if any formal discovery, and *Cohn* noted that discovery had not yet been

completed. *See Cornett*, No. 2:13-cv-01579; *Cohn*, No. 2:11-cv-1832. Here, the QST and CRT have not provided Duncan any evidence to support their claims. The CRT refused to produce documents under Rule 26-1, and the QST, which is now bootstrapping the CRT's former claims, has not produced any documents that support the CRT's former claims.

Duncan cannot and will not settle in a factual vacuum. To the extent the QST's refusal to pay Duncan results from Cross's actions on particular loans, then discovery about what Duncan and Cross allegedly did wrong on those particular loans would be essential before a meaningful mediation could take place. Which DL's were affected by Duncan's alleged wrongdoing? What damages did they suffer? At this point, the claims against Duncan are ethereal. The QST provided no competent proof of wrongdoing in its Opposition to the Motion for Summary Judgment, and has provided zero pages of documents relating to any such wrongdoing.

Even if the standing of the QST was clear, it is naïve for the QST to believe the Duncan will globally settle, prior to any discovery, and without any demonstration on the QST's part of Duncan's wrongdoing, just to avoid the expense of litigation. That is not a good faith attempt to resolve a dispute. It is thuggery.

**D.    The Court Lacks Jurisdiction over Non-Parties to Force Them to Mediate.**

The QST moves for an order compelling the CRT and Cross, both dismissed parties, and Bickel & Brewer, a non-party, to attend a mediation. The QST also wishes to invite any interested Direct Lenders (also non-parties) to participate. The QST does not state what authority the Court has to compel non-parties to mediation.

**E.    The Chubb Joinder Supports Resolving the Summary Judgment Issue.**

The Court will recall that Janet Chubb represents numerous Direct Lenders who are opposed to any funds of the QST being spent on the crusade against Duncan. Recently, she filed the *Response of Certain Trust Beneficiaries To Motion for Summary Judgment (Ct. Dkt. #142)*

*and Limited Joinder in Plaintiff's Motion for Order Directing Mediation (CT. DKT. #151)* (Doc. 152). In that response, on behalf of certain Direct Lenders she requested "[t]hat no funds from the B&B Settlement Trust belonging to B&B Direct Lender beneficiaries be spent on this dispute. If a claim is being pursued, it should be financed through the Claims Recovery Trust." This supports Duncan's concerns about the QST's standing. The QST does not and cannot speak for any of the Direct Lenders when it comes to the disputes at issue.

Ms. Chubb's brief further states: "**If the issues are not disposed of by summary judgment**, certain B &B Settlement beneficiaries respectfully request that the court order the parties to meet with a mediator, and this joinder is limited to that relief." (Emphasis added). Duncan agrees with Ms. Chubb that resolution of the summary judgment motion should occur before mediation.

### F.    If any Mediation is to be Successful, it Must be Done with Representatives of the DLs with whom Duncan can Mediate.

Duncan and Bickel & Brewer have provided numerous concessions to Direct Lenders as specific loans have been resolved, even foregoing their entitlement to any recovery from some transactions when taking their normal fees would have decimated recoveries to the Direct Lender group in that loan. Duncan is not opposed to addressing specific questions about specific loans with the specific direct lenders in question.

Assuming there were a way to negotiate with all Direct Lenders after Duncan were able to discover the alleged basis of the claims, then Duncan would consider negotiating with Direct Lenders other than the group responsible for bringing this shakedown litigation. From the CRT's initial disclosures, that group appears to be Donna Cangelosi, Christina Knoles, Daniel Newman, Kevin Olsen, and Robin Graham (the "Cangelosi Group").

Duncan has observed that most of the Direct Lenders who have taken the time to educate

1 | themselves are satisfied with the outcome of the 892 litigation and have no desire to deprive
2 | Duncan of what he earned.  But many of the Direct Lenders have also shown a propensity
3 | throughout the USA Mortgage bankruptcy and related cases to be led by any vocal DL willing to
4 | take the time to lead out.  If they have chosen Cangelosi to represent them, that is their
5 | prerogative, but Duncan is not obliged or willing to mediate with people Duncan has concluded
6 | are deceitful and opportunistic.
7 |
8 | Duncan would only consider mediating with the Direct Lenders in a scenario where the
9 | Cangelosi group is not involved.  A credible representative of the Direct Lenders, such as Janet
10 | Chubb, would be welcomed.

**III.    CONCLUSION**

For the foregoing reasons, Duncan requests that the Court deny QST's motion.  The Court should rule on the Motion for Summary Judgment, which is more likely to dispose of or narrow the issues in this case, and which will resolve the questions about the QST's standing.

DATED this  19th  day of March, 2015.

*/s/ Michael Rawlins*
_____
Timothy S. Cory, Esq.
Michael D. Rawlins, Esq.
*Attorneys for McAlan Duncan*

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of Durham Jones & Pinegar, and that on March 19th, 2015 I caused to be served the foregoing Opposition in the following manner:

[X]     **a.     Electronic Service**

Under Administrative Order 02-1 (Rev. 8-31-04) of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed and served through the Notice of Electronic Filing automatically generated by that Court's facilities.

[ ]     **b.     United States Mail**

By depositing a copy of the above-referenced document for mailing in the United States Mail, first class postage prepaid, at Las Vegas, Nevada, to the parties on the attached mailing matrix at their last known mailing addresses, on the date above written.

[ ]     **c.     Facsimile Transmission**

By facsimile to the facsimile numbers indicated, to those persons listed on the attached service list, on the date above written.  No error was reported by the facsimile machine that I used.

[ ]     **d.     Personal Service**

[ ]     For a party represented by an attorney, delivery was made by handing the documents to the attorney or by leaving the documents at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the documents in a conspicuous place in the office, on the date written above.

[ ]     For a party, delivery was made by handing the documents to the party or by leaving the documents at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there, on the date written above.

---

**I declare under penalty of perjury that the foregoing is true and correct.**

Dated: March 19th, 2015.

/s/ Michael Rawlins                     .
An Employee of Durham Jones & Pinegar

- 9 -